**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**CASE NO.:**

| | |
|---|---|
| **RICHARD R. GOMES and CAROL RICCIUTI**, on behalf of themselves and all others similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>**JPMORGAN CHASE & COMPANY, JP MORGAN CHASE BANK, NA d/b/a CHASE BANK**,<br><br>Defendants. | <u>**COMPLAINT**</u><br><br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiffs, by and through their attorney, Abel L. Pierre, Esq., as and for their complaint against the Defendants JPMORGAN CHASE & COMPANY (hereinafter "JPMorgan") and JPMORGAN CHASE BANK, NA d/b/a CHASE BANK (hereinafter, "Chase Bank"), alleges as follows:

## I.    PRELIMINARY STATEMENT

1. Plaintiffs Richard R. Gomes ("Gomes") and Carol Ricciuti, both New York State residents and over the age of 18 years, bring this action against Defendant JPMorgan, a multinational banking and financial services holding company and Defendant Chase Bank, is the consumer and commercial banking subsidiary of Defendant JPMorgan. This action alleges that Defendants violated various amendments of the Truth in Lending Act (15 U.S.C. § 1601 et seq.), including but not limited to the Fair Credit Billing Act (15 U.S.C. § 1666 et seq.) and the Home Equity Loan Consumer Protection Act (15 U.S.C. § 1637(a)), and the

New York Consumer Protection Act. Plaintiffs seek injunctive relief, actual, statutory and punitive damages, and an award of attorneys' fees and costs.

2. Plaintiffs bring this action on all causes of action on behalf of themselves and the members of a class pursuant to Federal Rule of Civil Procedure 23.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 15 USC § 1640(e) and 28 U.S.C. § 1331 because Plaintiffs bring claims pursuant to the Truth in Lending Act, 15 U.S.C. § 1601 et seq. and its amendments, a federal law. This Court also has jurisdiction pursuant to 15 U.S.C. § 1332, because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000. In addition, this Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

4. The Plaintiffs are natural persons and residents of Suffolk County, New York.

5. Venue is proper in this Court, and in this District, pursuant to 28 U.S.C. § 1391(b) and 1391(c) because Defendants are licensed to do business in this State, and because a substantial portion of the actions complained of occurred or had an effect in this State.

## III. ALLEGATIONS AS TO PARTIES

6. Plaintiff Richard R. Gomes is an adult individual residing in Suffolk County, State of New York.

7. Plaintiff Carol Ricciuti is an adult individual residing in Suffolk County, State of New York.

8. At all times relevant hereto, Plaintiffs were "persons" as defined by 15 U.S.C § 1602 (e) and "consumers" as that term is defined by 15 U.S.C § 1602 (i).

9.  Upon information and belief, JPMORGAN CHASE & COMPANY is a foreign business corporation and authorized to do business in the State of New York through its principal executive offices at 270 Park Avenue, New York, NY 10017.

10. Defendant JPMORGAN CHASE & COMPANY is authorized to conduct business in the State of New York through its registered agent CT Corporation System at 111 Eighth Avenue, New York, NY 10011.

11. At all times relevant hereto, JPMorgan is a multinational banking and financial services holding company which offers a wide range of investment banking products and services in all major capital markets and is an "organization" as defined by 15 U.S.C § 1602 (d).

12. Upon information and belief, JP MORGAN CHASE BANK, NA d/b/a CHASE BANK, is authorized to conduct business in the State of New York through its parent company JPMORGAN CHASE & COMPANY's principal executive offices at 270 Park Avenue, New York, NY 10017.

13. At all times relevant hereto, Chase Bank in the ordinary course of business, regularly extends open-end consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and is the person to whom the debt arising from the consumer credit transaction is initially payable by agreement and is a "creditor" as defined by 15 U.S.C § 1602 (g).

14. Upon information and belief, Chase Bank extends open-end credit in the form of home equity line credit on which consumers are assessed finance charges and is payable by an agreement.

15. Defendant Chase Bank owns and services a home equity line of credit in which the Plaintiffs are the obligors.

16. Defendants are subject to jurisdiction in the State of New York and venue of this district pursuant to New York Long Arm jurisdiction statute through the causation of injury in the state by acts or omissions inside and outside of the State of New York.

## IV.    APPLICABLE LAWS

17. The Fair Credit Billing Act (FCBA) 15 U.S.C. § 1666 et seq. added a number of important substantive protections for open-end credit, as an amendment to the Truth in Lending Act (TILA) 15 U.S.C. § 1601 et seq.

18. The FCBA establishes certain billing error procedures for "persons" and "organizations", including corporations, who extends open-end credit. These procedures protect both individuals who are actually liable on an account and those whom the creditor alleges are obligors.

19. The FCBA defines a "billing error" as quite a few things, more specifically, "a reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof." 15 U.S.C. § 1666 (a).

20. The FCBA outlines that once a creditor receives written notice from an obligor about a billing error and the reasons for the obligor's belief that there is a billing error, the creditor shall, "no later than two complete billing cycles of the creditor (in no event later than ninety days) after the receipt of the notice…make appropriate corrections in the account of the obligor, including the crediting of any finance charges on amounts erroneously billed, and transmit to the obligor a notification of such corrections and the creditor's explanation of any change in the amount indicated by the obligor…" 15 U.S.C. § 1666 (b).

21. The Defendant JPMorgan is a legal person and organization subject to the requirements of the FCBA.

22. The Defendant Chase Bank is legal person and creditor subject to the requirements of the FCBA.

23. The Home Equity Loan Consumer Protection Act (HELCPA) 15 U.S.C. § 1637(a), provided important substantive consumer protection requirements for Home Equity Lines of Credit (HELOC), as an amendment to the Truth in Lending Act (TILA) 15 U.S.C. § 1601 et seq.

24. The New York Consumer Protection Act (the "CPA"), N.Y. Gen. Bus. Law §349, was enacted to protect consumers from deceptive acts and practices, and declares that "deceptive acts or practices in the conduct of any business, trade or commerce, or in the furnishing of any service in [New York] state" are illegal. N.Y. Gen. Bus. Law §349(a).

25. The CPA permits "any person who has been injured by reason of any violation [of the CPA]" to bring an action to enjoin the act or practice at issue, and to recover damages and attorneys' fees. N.Y. Gen. Bus. Law § 349(h).

## V.    APPLICABLE LAWS

26. The Plaintiffs reallege and incorporates ¶¶1-24 above as if fully set out herein.

27. On or about September 15, 2002, Plaintiffs obtained a HELOC with Defendant Chase Bank secured by the property located at 45 Whitson Road, Huntington Station, New York 11746. The conditions of the loan were that for the first ten (10) years, monthly payments made would be applied to the interest part of the loan only. After the first ten (10) years elapsed, then payments would be applied to the principal until maturity on or about September 15, 2032.

28. As per the agreement with Chase Bank, Plaintiffs made their regular monthly and timely payments to Chase Bank without incident.

29. On or about May 27, 2011, Plaintiffs filed a voluntary joint petition under Title 11 Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York.

30. As per the filing date for relief under chapter 13 of the Bankruptcy Code, Plaintiffs' HELOC with Chase Bank was in the approximate amount $96,408.00. As of the date of bankruptcy filing, Plaintiffs' account was current and there were no outstanding monthly payments.

31. Plaintiffs' real property as described above was listed on Schedule A of the bankruptcy petition and the HELOC with Creditor Chase Bank was listed on Schedule D of Plaintiffs' bankruptcy petition.

32. Upon information and belief, Defendants received notice of Plaintiffs' bankruptcy filing.

33. On or about June 1, 2011, Defendant Chase Bank sent Plaintiffs a letter informing them that due to their bankruptcy filing, then monthly billing statements would not be forwarded to them. As such, Plaintiff in turn sent authorization to Defendant Chase Bank to permit reinstatement of their monthly billing statements.

34. Although Chase Bank had terminated their monthly billing statements, Plaintiffs still forwarded their monthly payments to Chase in a timely fashion.

35. Consequently, on or about July 26, 2017, Plaintiffs received their first post-petition account statement. Said statement reflected a post-petition payment amount of $527.42. In one fell swoop, Plaintiffs' monthly payment had doubled.

36. Defendant Chase Bank subsequently filed with the court a Notice of Payment Change dated July 29, 2011, in which it outlined Plaintiff's total new monthly as $262.73, effective August 15, 2011. Defendant gave no reason for the payment change.

37. Despite receiving Chase Bank's notification, Plaintiffs proceeded to maintain their pre-bankruptcy filing payment schedule, which amounted to Plaintiffs paying more than was required. As a result of this, Plaintiffs notified Defendant that they would like Chase Bank to apply the difference between the pre-bankruptcy filing payment and Chase Bank's new payment of $262.73, to be applied to the principal of the loan.

38. As a mandatory requirement of all chapter 13 bankruptcy petitions, Plaintiffs filed a proposed chapter 13 debt repayment plan.

39. The plan specifically outlined that Chase, as lien holder of the HELOC "to be paid in the sum of $0.00 plus 0 % interest over the life of the chapter 13 plan. In other words, Plaintiffs elected to meet their obligations for the HELOC outside of the chapter 13 plan. As a matter of fact, in correspondence directed to Chase Bank, Plaintiffs clearly outlined their intentions in regards to the HELOC.

40. Plaintiffs then reached out to their bankruptcy attorney, who in turned contacted Chase Bank to notify it of its billing discrepancy. On or about August 3, 2011, Chase was contacted by Plaintiffs' bankruptcy attorney's office and spoke to a representative who identified himself as "Kevin" to get clarification on why the payment was doubled. Kevin informed the attorney's office that the post-petition payment will be higher because it is the payment amount that the Debtors will pay if they were not under the auspices of a chapter 13 plan. Kevin was in turn informed that the Plaintiffs had elected to make their monthly payments on the HELOC outside of the chapter 13 plan. When Kevin became aware of this, he then said that the Debtors should pay the lower amount.

41. Not satisfied with Kevin's explanation, Plaintiffs' bankruptcy attorney's office called Chase Bank again and this time was connected to a representative who identified himself

as "Paul". Paul explained that for any given year, Plaintiffs' monthly payment oscillates between the range of $260.00 and $270.00 given the current interests rates. At that time, Paul notified the attorney's office that Plaintiffs' payment was $262.73 and there were no fees that occurred prior to the bankruptcy filing. Paul then went on to state that there was no reason for the double payment.

42. Defendant Chase Bank filed with the court a Notice of Payment Change dated August 31, 2011, in which it outlined Plaintiff's total new monthly as $262.08, effective September 15 15, 2011. Defendant gave no reason for the payment change.

43. Defendant Chase Bank filed with the court a Notice of Payment Change dated October13, 2011, in which it outlined Plaintiff's total new monthly as $252.95, effective October 15, 2011. Defendant gave no reason for the payment change.

44. Plaintiffs' chapter 13 debt repayment plan was subsequently confirmed by the court by the order of the Hon. Alan S. Trust on October 31, 2011.

45. It is important to note that Plaintiffs did not asked for forgiveness of the loan under their bankruptcy petition, nor at any time during the pendency of their bankruptcy petition were they granted forgiveness of the loan.

46. Plaintiffs maintained their payment schedule outlined in ¶36 as the bankruptcy proceeded without incident, until sometime in 2012.

47. During the period of May 2012 to November 2012, Plaintiffs noticed a disproportionate fluctuation in their HELOC monthly payments that were due. The monthly payments Chase Bank claimed that Plaintiffs owed deviated far away from the amount it claimed was Plaintiffs' new monthly payment in its last filed Notice of Payment Change dated October 13, 2011.

48. Plaintiffs quickly deduced that Chase Bank was misapplying their monthly payments. This was specifically pinpointed to the months of August 2012, when that month's interest payment was misapplied to the principal amount and September 2012, where that month's payment was applied to the interest, and not the principal as it should have been according to the terms of the loan. This was Chase's first violation of the terms of the loan, in that after September 15, 2012, funds will be applied to the principal loan balance, not the interest.

49. Moreover, the month of September 2012, was to mark the commencement of when Plaintiffs' payments were to be applied to the principal amount according to the terms of the HELOC. Plaintiffs' first statement received from Chase Bank after those terms were to commence indicated that Plaintiffs owed a post-petition payment amount of $642.35 which was due by October 15, 2012.

50. Additionally, Plaintiffs also received another statement from Chase Bank which informed them that their new minimum payment due by October 15, 2012 was $632.31.

51. Baffled, Plaintiffs immediately reached out to Chase Bank to inform it of its billing errors, specifically the misapplications of payments and also to notify it that a reset of the post-petition payment amount to what Chase Bank outlined in its last Notice of Payment change dated a year ago (October 13, 2011) was warranted. Plaintiffs were assured that their issues would be addressed, however, follow up conversations and subsequent correspondence confirmed that Chase Bank simply swept Plaintiffs' concerns under the rug.

52. On or about March 8, 2013, Plaintiffs' bankruptcy counsel sent a letter to Chase Bank informing them of their billing errors.

53. Chase then sent a series of responses following Plaintiffs' billing error complaints which were completely perplexing and never addressed Plaintiffs' billing error complaints.

54. On or about April 21, 2015, Defendant, out of the blue, filed a notice of payment change (its first one in over two years) which stated that Plaintiffs' new monthly payment would be $592.24, beginning May 15, 2015. Defendant Chase Bank's "Reason for Change Disclosure" was as follows:

> "This is an open-end home equity line of credit with interest calculated, in arrears, on a simple interest rate basis. This means that the principal balance, the interest rate and the finance charge may vary from day to day. For this reason, it is not possible to determine the interest rate and minimum amount of a prospective basis. The figures reflected in this payment change notice are based on the terms of the loan."

55. Defendant Chase Bank's Reason for Change Disclosure was completely false. Firstly, Plaintiffs' loan was never in arrears, as Plaintiff continuously made their timely monthly payments and never faltered in paying the higher amount of what was supposedly due. Secondly, Chase Bank claiming that it is not possible to determine the interest rate and minimum amount on a prospective basis, is to be quite frank, nonsense. Prior to Plaintiffs filing bankruptcy, Defendant never failed to inform Plaintiffs of their interest rates and minimum amount due. To suddenly arrive at that conclusion in the course of bankruptcy is nonsense derived by Defendant to conceal its own internal errors of mismanaging Plaintiffs' payments.

56. When Chase Bank seemingly realize that its explanation for the careless fluctuations in Plaintiffs' payment amounts did not pass the smell test, Defendant's response was a month

later to file another notice of payment change dated May 15, 2015, which stated Plaintiffs' new monthly payment would be $379.74, beginning June 15, 2015. Defendant's "Reason for Change Disclosure" was a lengthy one. It went as follows:

"The "Notice of Mortgage Payment Change" that accompanies this disclosure reflects a change in interest rate, and a change in payment, on the debtor's home equity line of credit account ("HELOC") held by Chase. Specifically, Chase has voluntarily reduced the debtor's interest rate on the HELOC to 0.00% and reduced the debtor's interest payment to $0.00. While this reduction remains in effect, Chase will waive the interest the debtor would otherwise be obligated to pay under the terms of the HELOC. This means that Chase will not require the debtor to pay the difference between the rate due under the HELOC and the reduced 0.00% interest rate during the term of the bankruptcy proceeding. This reduced rate will remain in effect until the earlier to occur of the following: (a) the debtor's bankruptcy proceeding is dismissed, (b) the debtor successfully completes his or her Chapter 13 plan and is discharged by the Bankruptcy Court, (c) the debtor's discharge, if the debtor's bankruptcy proceeding is converted to a Chapter 7. Upon the occurrence of any of these events, the debtor's interest rate and related payment will revert back to the higher rate and the payment determined in accordance with the HELOC agreement. If during the term of the bankruptcy proceeding, the HELOC agreement requires the debtor to begin making principal payments, Chase will expect the debtor to make principal payments in accordance with the terms of the HELOC agreement.

This change does not constitute a permanent modification of the payment obligations under the terms of the HELOC agreement, mortgage, or other loan documents."

57. Yet again, Defendant's Reason for Change Disclosure was completely false and honestly, quite alarming. Chase Bank claimed to voluntarily reduce the Plaintiffs' interest rate to 0.00% and reduced Plaintiff's interest payment to $0.00. Whenever has a banking institution voluntarily and in good faith choose to be so magnanimous to customers? The real reason for Defendant's ill-concealed good gesture was to mask the fact that Defendant, after almost three years realized that it was in violation of the terms of the loan in that Defendant failed to apply Plaintiffs' monthly payments to the principal amount of the loan and not the interest as it had been all this time.

58. Additionally, how can Chase Bank waive the interest the Debtor would otherwise be obligated to pay under the terms of the HELOC, when the terms of the HELOC state that the payment amounts had to be applied to the principal?

59. Moreover, what was alarming about this entire Reason for Change Disclosure is that Chase Bank never applied the monies Plaintiffs' paid to the principal.

60. Defendant was immediately contacted on or about May 27, 2015 via electronic mail to Raymond Reynolds, who identified himself as a Vice President at JP Morgan Chase Bank, NA on the Notice of payment change, regarding this billing error. Upon information and belief the electronic mail was received. Defendant Chase Bank offered no explanations for nor conducted an investigation into this billing error complaint. Additionally, Defendant never explained why it would voluntarily forgive over twenty four (24) months of interest on Plaintiffs' loan.

61. Sometime thereafter, more precisely in March 2016, Plaintiff received a Tax Year 2015 Form 1099-MISC from Defendants indicating that Plaintiffs received "Other Income" in the amount of $605.95 from Defendants. This was patently false, as the only form of monies Plaintiffs received from Chase during tax year 2015 was a check dated May 26, 2015, #1662369 in the amount of twenty dollars ($20.00).

62. Plaintiffs immediately sent out a billing error dispute on or about March 12, 2016 to Defendant. Upon information and belief, Defendant received the dispute.

63. Defendants' response to the dispute was to claim that Defendants had entered into a settlement agreement with the United States Trustee Program to address certain issues with regard to payment change notices filed in Chapter 13 bankruptcy cases. We took this to mean that Chase was referring to its settlement with the Department of Justice's US Trustee Program (USTP) that was filed in the United States Bankruptcy Court for the Eastern District of Michigan which required Chase to pay more than $50 million, including cash payments, mortgage loan credits and loan forgiveness, to over 25,000 homeowners who are or were in bankruptcy. In this matter, Chase acknowledged that it filed in bankruptcy courts around the country more than 50,000 payment change notices that were improperly signed, under penalty of perjury, by persons who had not reviewed the accuracy of the notices.  More than 25,000 notices were signed in the names of former employees or of employees who had nothing to do with reviewing the accuracy of the filings.  The rest of the notices were signed by individuals employed by a third party vendor on matters unrelated to checking the accuracy of the filings. Chase also acknowledged that it failed to file timely, accurate notices of mortgage payment changes and failed to provide timely, accurate escrow statements.

64. Chase Bank also went on to explain that Plaintiffs' account was credited $5,787.91 because it did not file one or more Payment Change Notice with the court during the pendency of Plaintiffs' bankruptcy specifically in the time period between November 19, 2013 and March 31, 2015.

65. Now, it begs the question that if this "credit" was for the months between November 19, 2013 and March 31, 2015, when Defendants failed to file payment change notices, what in the world happened to the "credit" for the months between October 2011 (last filed payment change notice) and October 2013 when Defendants failed to file payment change notices?

66. Again, Defendants' explanation for the billing error did not pass the smell test in that the Tax Year 2015 Form 1099-MISC to the Plaintiffs indicated they received an amount of $605.95 from Defendants, but in its explanation, Defendants claimed it credited Plaintiff $5,787.91.

67. What Defendants failed to explain or is attempting to hide is the fact that it was incredibly negligent and mishandled Plaintiffs' timely and higher monthly payments and instead of facing its own tax consequence, decided to forward to Plaintiffs a Form 1099-MISC and put the tax burden on the Plaintiffs. Defendants are hiding the fact that this money that it decided to "credit" Plaintiffs' account was in fact Plaintiffs' own money that they had been paying unfailingly every month since the commencement of their bankruptcy case.

68. Sometime thereafter, more precisely in March 2017, Plaintiff received a Tax Year 2016 Form 1099-MISC from Defendants indicating that Plaintiffs received "Other Income" in the amount of $ $11,479.67 from Defendants.

69. Plaintiffs immediately sent out a billing error dispute on or about March 17, 2017 to Defendants. Upon information and belief, Defendants received the dispute.

70. Defendants' response to the dispute was to claim that Defendants had credit Plaintiffs' account on April 25, 2016 for $5,787.91 due to late payment change notice during their bankruptcy and another credit to Plaintiffs' account on June 23, 2016 of $5,437.58 due to a late payment change notice during their bankruptcy and also issuing a check to Plaintiffs for $254.18 on July 27, 2016.

71. This was alarming for many reasons. First and most important is the fact that in their explanation of the challenged billing error for the 2016 1099, Defendants stated that Plaintiffs' account was credited for $5,787.91 on April 25, 2016. Now, if you look closely, that is the same explanation that Defendants furnished in response to the billing error for the 2015 1099. This is clearly a sinister dealing on the Defendants' part and clearly outlines that Defendants wilfully passed on their own tax liabilities to the unsuspecting Plaintiffs.

72. Additionally, what Defendants failed to relay was the fact that this was Plaintiffs' own monies dutifully paid to their account timely and monies that Defendants mismanaged.

73. These two 1099-MISC itemized in ¶¶60 and 67 represented the Plaintiffs' money paid towards their debt obligation with Defendants. This money did not belong to the Defendants. Chase Bank is penalizing Plaintiffs with their own money in order to escape its own tax encumbrance as a result of its own blatant and willful errors.

74. Chase Bank never out of the goodness of its heart decided to "credit" Plaintiffs account. What Defendant did and is attempting to hide is the fact that once it was exposed by the US Justice Department for its negligence and fraud, Defendant quickly attempted to rectify

its duplicitous activities by reconciling its books, but in doing so, Defendant realized that it would be stuck with a large tax consequence.

75. Once adjustments to correct its bookkeeping errors were made, Chase Bank realized that in its adjustments a tax consequence was inevitable and instead of facing its own tax burden, decided to pawn it off on the unsuspecting Plaintiffs.

76. It is wholly clear in this case at bar, that there were more than one different organizations either internal or external of Chase Bank that were responding to Plaintiffs' loan. Chase Bank's own admission in its settlement with the USTP is evidence of this.

77. Defendants knew for a fact that Plaintiffs monthly payments were indeed received timely and were never correctly applied as per the terms of the loan.

78. Chase Bank never voluntarily reduced Plaintiffs' interest rate and interest payment. Chase Bank's claim of "credit" to Plaintiffs' account was with Plaintiffs' own money they religiously paid over the last five years.

79. Plaintiffs filed their chapter 13 bankruptcy to escape a tax liability they had accrue prior. With the successful completion of their chapter 13 plan and their discharge of debts granted, Plaintiff thought that they were free and clear of any and all tax liabilities. Now, Defendants' fraudulent, negligent and deceitful acts have led to another significant and completely unfair tax liability for the Plaintiffs.

80. Defendants' actions were willful, negligent and fraudulent.

81. By undertaking the aforementioned actions, Defendants have gifted Plaintiffs with a totally unfair and completely wrong tax liability.

82. Defendants know or should know that their undertaking of these actions was false and deceptive and were not intended to benefit the Plaintiffs.

83. The actions and omissions of the Defendants as described above constituted violations of the Fair Credit Billing Act, the Home Equity Loan Consumer Protection Act and the New York Consumer Protection Act.

84. Plaintiffs suffered direct and proximate emotional and financial harm as a result of Defendants' conduct. This harm included but was not limited to being left responsible for another significant and completely unfair tax liability, extreme mental anguish and emotional distress and humiliation.

## VI.    CLASS ALLEGATIONS

85. Pursuant to Rule 23 of the Federal Rules of Civil Procedures, Plaintiffs bring this action for themselves and on behalf of a class of similarly situated individuals initially defined as follows:

(A) All natural persons residing in the United States (including all territories and other political subdivisions of the United States) who were debtors in chapter 13 bankruptcy cases and were the obligors of home equity line of credit loans owned and operated by JP Morgan Chase Bank and its parent company JPMorgan Chase & Company, during the twenty five years preceding the filing of this Complaint and the pendency of this suit.

(B) Excluded from the Class are employees, agents, servants and all persons acting in concert with Defendants, all counsel in this case and any judge assigned to hear this action.

86. **Numerosity. FED. R. CIV. P. 23(a)(1)**. Upon information and belief, Defendants are listed as creditors of home equity line of credit loans in chapter 13 bankruptcy cases filed each year. As a result, the Class members are so numerous that joinder of all is impractical.

The names and addresses of the Class members are identifiable through documents maintained by the Defendants. The Class members may be notified of the pendency of this action by published, emailed and/or mailed notice.

87. **Existence and Predominance of Common Questions of Law and Fact. FED. R. CIV. P. 23(a)(2)**. Common questions of law and fact exist as to all members of the Class. These common legal and factual questions include, among other things:

(A) Whether Defendants followed procedures to conduct reasonable investigations to determine the occurrence of billing errors;

(B) Whether Defendants failed to provide consumers with documentary evidence of their indebtedness after conducting reasonable investigations in consumers' complaints;

(C) Whether Defendants failed to deliver to consumers explanations of their reasons for concluding the assertions of billing errors by consumers were wrong after conducting reasonable investigations;

(D) Whether Defendants failed to furnish copies of documentary evidence to consumers as requested after conducting reasonable investigations;

(E) Whether Defendants unilaterally changed the terms of HELOC loans after the loans commenced;

(F) Whether Defendants changed the terms of HELOC loans after the loans commenced without consumers' express consent in writing to the changes at the time;

(G) Whether Defendants made changes to HELOC loans after the loans commenced that were not unequivocally beneficial to the consumer for the duration of the loan;

(H) Whether Defendants' conduct constituted violations of various sections of the FCBA and the HELCPA.

88. **Typicality. FED. R. CIV. P. 23(a)(3)**. Plaintiffs' claims are typical of the claims of each Class member. Plaintiffs are entitled to relief under the same cause of action as the other members of the Class.

89. **Adequacy. FED. R. CIV. P. 23(a)(4)**. Plaintiffs are adequate representatives of the Class because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent; they have retained counsel competent and experienced in such litigation; and they intend to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

90. **Superiority. FED. R. CIV. P. 23(b)(3)**. Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

91. **Injunctive Relief Appropriate for the Class. FED. R. CIV. P. 23(b)(2)**. Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiff and the Class members.

## VII.    RESPONDEAT SUPERIOR LIABILITY

92. The acts and omissions of Defendant Chase Bank, as the consumer and commercial banking subsidiary of Defendant JPMorgan, who owned and operated Plaintiffs' HELOC as further described herein, were committed within the time and space limits of its organizational relationship with its principal, Defendant JPMorgan.

93. The acts and omissions by Defendant Chase Bank, as the consumer and commercial banking subsidiary of Defendant JPMorgan was incidental to, or of the same general nature as, the responsibilities subsidiaries were authorized to perform by Defendant JPMorgan in operating HELOCs.

94. By committing these acts and omissions against Plaintiffs, Defendant Chase Bank was motivated to benefit its principal, Defendant JPMorgan.

95. Defendant JPMorgan is therefore liable to Plaintiffs through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal laws by its subsidiaries, including but not limited to violations of the TILA and New York tort law.

## VIII.   CLAIMS FOR RELIEF AGAINST JPMORGAN CHASE & COMPANY, JP MORGAN CHASE BANK, NA d/b/a CHASE BANK

## COUNT I

96. The Plaintiffs reallege and incorporate the foregoing as if fully set out herein.

97. By responding to Plaintiffs' complaint of billing errors in merely three (3) days after receiving the complaint, Defendant Chase Bank failed to conduct a reasonable investigation to determine if billing errors Plaintiffs asserted occurred, in violation of the Truth in Lending Act (Regulation Z), Reg. Z § 226.13(f).

98. As a result of Chase Bank's conduct and inactions, Plaintiffs suffered damages as set forth at ¶ 83 supra.

99. Chase Bank's conduct and actions were willful, rendering Chase Bank liable for actual damages in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a)(1) and statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(A).

100.    As a result of Chase Bank's willful conduct and actions, JPMorgan is liable to Plaintiffs through the Doctrine of Respondeat Superior.

101.    Alternatively, Chase Bank's conduct and actions were negligent, rendering Chase Bank liable for actual damages in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a)(1) and statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(A).

102.    As a result of Chase Bank's negligent conduct and actions, JPMorgan is liable to Plaintiffs through the Doctrine of Respondeat Superior.

103.    Plaintiffs are entitled to recover costs and attorneys' fees from Defendants in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a)(1).

104.    This Court has the equitable power to enjoin Defendants from engaging in conduct that violates Regulation Z, and Plaintiffs request that this Court exercise this equitable jurisdiction.

## <u>COUNT II</u>

105.    The Plaintiffs reallege and incorporate the foregoing above as if fully set out herein.

106.     By unilaterally changing the terms of Plaintiffs' home equity line of credit loan, Chase Bank is in violation of in violation of the Truth in Lending Act (Regulation Z), Reg. Z § 226.5(b)(f)(3).

107.     As a result of Chase Bank's conduct and inactions, Plaintiffs suffered damages as set forth at ¶ 83 supra.

108.     Chase Bank's conduct and actions were willful, rendering Chase Bank liable for actual damages in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a)(1) and statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(A).

109.     As a result of Chase Bank's willful conduct and actions, JPMorgan is liable to Plaintiffs through the Doctrine of Respondeat Superior.

110.     Alternatively, Chase Bank's conduct and actions were negligent, rendering Chase Bank liable for actual damages in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a)(1) and statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(A).

111.     As a result of Chase Bank's negligent conduct and actions, JPMorgan is liable to Plaintiffs through the Doctrine of Respondeat Superior.

112.     Plaintiffs are entitled to recover costs and attorneys' fees from Defendants in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a)(1).

113.     This Court has the equitable power to enjoin Defendants from engaging in conduct that violates Regulation Z and Plaintiffs request that this Court exercise this equitable jurisdiction.

## **COUNT III**

114.     The Plaintiffs reallege and incorporate the foregoing above as if fully set out herein.

115.     By making changes to Plaintiffs' home equity line of credit loan after the loan commenced, that does not unequivocally benefit the Plaintiffs for the duration of the loan,

Chase Bank is in violation of the Truth in Lending Act (Regulation Z) Reg. Z § 226.5(b)(f)(3)(iv).

116.    As a result of Chase Bank's conduct and inactions, Plaintiffs suffered damages as set forth at ¶ 83 supra.

117.    Chase Bank's conduct and actions were willful, rendering Chase Bank liable for actual damages in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a)(1) and statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(A).

118.    As a result of Chase Bank's willful conduct and actions, JPMorgan is liable to Plaintiffs through the Doctrine of Respondeat Superior.

119.    Alternatively, Chase Bank's conduct and actions were negligent, rendering Chase Bank liable for actual damages in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a)(1) and statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(A).

120.    As a result of Chase Bank's negligent conduct and actions, JPMorgan is liable to Plaintiffs through the Doctrine of Respondeat Superior.

121.    Plaintiffs are entitled to recover costs and attorneys' fees from Defendants in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a)(1).

122.    This Court has the equitable power to enjoin Defendants from engaging in conduct that violates the Regulation Z and Plaintiffs request that this Court exercise this equitable jurisdiction.

**COUNT IV**

123.    The Plaintiffs reallege and incorporate the foregoing above as if fully set out herein.

124.    By failing to provide Plaintiffs with documentary evidence of their indebtedness after having conducted an investigation, upon request, Chase Bank is in violation of the Fair Credit Billing Act, 15 U.S.C. § 1666 (a)(3)(B)(iii).

125.     As a result of Chase Bank's conduct and inactions, Plaintiffs suffered damages as set forth at ¶ 83 supra.

126.     Chase Bank's conduct and actions were willful, rendering Chase Bank liable for actual and statutory damages in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a).

127.     As a result of Chase Bank's willful conduct and actions, JPMorgan is liable to Plaintiffs through the Doctrine of Respondeat Superior.

128.     Alternatively, Chase Bank's conduct and actions were negligent, rendering Chase Bank liable for actual and statutory damages pursuant to 15 U.S.C. § 1640(a).

129.     As a result of Chase Bank's negligent conduct and actions, JPMorgan is liable to Plaintiffs through the Doctrine of Respondeat Superior.

130.     Plaintiffs are entitled to recover costs and attorneys' fees from Defendants in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a).

131.     This Court has the equitable power to enjoin Defendants from engaging in conduct that violates the Fair Credit Billing Act, and Plaintiffs request that this Court exercise this equitable jurisdiction.

## COUNT V

132.     The Plaintiffs reallege and incorporate the foregoing above as if fully set out herein.

133.     By failing to deliver to Plaintiffs an explanation of its reasons for concluding that the billing error asserted by Plaintiffs was correctly reflected on the statement after having conducted an investigation, Chase Bank is in violation of the Fair Credit Billing Act, 15 U.S.C. § 1666 (a)(3)(B)(iii).

134.    As a result of Chase Bank's conduct and inactions, Plaintiffs suffered damages as set forth at ¶ 83 supra.

135.    Chase Bank's conduct and actions were willful, rendering Chase Bank liable for actual and statutory damages in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a).

136.    As a result of Chase Bank's willful conduct and actions, JPMorgan is liable to Plaintiffs through the Doctrine of Respondeat Superior.

137.    Alternatively, Chase Bank's conduct and actions were negligent, rendering Chase Bank liable for actual and statutory damages pursuant to 15 U.S.C. § 1640(a).

138.    As a result of Chase Bank's negligent conduct and actions, JPMorgan is liable to Plaintiffs through the Doctrine of Respondeat Superior.

139.    Plaintiffs are entitled to recover costs and attorneys' fees from Defendants in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a).

This Court has the equitable power to enjoin Defendants from engaging in conduct that violates the Fair Credit Billing Act, and Plaintiffs request that this Court exercise this equitable jurisdiction.

## COUNT VI

140.    The Plaintiffs reallege and incorporate the foregoing above as if fully set out herein.

141.    By unilaterally changing the terms of Plaintiffs' home equity line of credit loan, Chase Bank is in violation of the Home Equity Loan Consumer Protection Act, 15 U.S.C. § 1637A.

142.    As a result of Chase Bank's conduct and inactions, Plaintiffs suffered damages as set forth at ¶ 83 supra.

143.    Chase Bank's conduct and actions were willful, rendering Chase Bank liable for actual damages in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a)(1) and statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(A).

144.    As a result of Chase Bank's willful conduct and actions, JPMorgan is liable to Plaintiffs through the Doctrine of Respondeat Superior.

145.    Alternatively, Chase Bank's conduct and actions were negligent, rendering Chase Bank liable for actual damages in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a)(1) and statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(A).

146.    As a result of Chase Bank's negligent conduct and actions, JPMorgan is liable to Plaintiffs through the Doctrine of Respondeat Superior.

147.    Plaintiffs are entitled to recover costs and attorneys' fees from Defendants in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a)(1).

148.    This Court has the equitable power to enjoin Defendants from engaging in conduct that violates the Home Equity Loan Consumer Protection Act and Plaintiffs request that this Court exercise this equitable jurisdiction.

## COUNT VII

149.    The Plaintiffs reallege and incorporate the foregoing above as if fully set out herein.

150.    By changing the terms of Plaintiffs' home equity line of credit loan without obtaining Plaintiffs' express agreement in writing, Chase Bank is in violation of the Home Equity Loan Consumer Protection Act, 15 U.S.C. § 1637A.

151.    As a result of Chase Bank's conduct and inactions, Plaintiffs suffered damages as set forth at ¶ 83 supra.

152.     Chase Bank's conduct and actions were willful, rendering Chase Bank liable for actual damages in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a)(1) and statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(A).

153.     As a result of Chase Bank's willful conduct and actions, JPMorgan is liable to Plaintiffs through the Doctrine of Respondeat Superior.

154.     Alternatively, Chase Bank's conduct and actions were negligent, rendering Chase Bank liable for actual damages in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a)(1) and statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(A).

155.     As a result of Chase Bank's negligent conduct and actions, JPMorgan is liable to Plaintiffs through the Doctrine of Respondeat Superior.

156.     Plaintiffs are entitled to recover costs and attorneys' fees from Defendants in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a)(1).

157.     This Court has the equitable power to enjoin Defendants from engaging in conduct that violates the Home Equity Loan Consumer Protection Act and Plaintiffs request that this Court exercise this equitable jurisdiction.


**COUNT VIII**

158.     The Plaintiffs reallege and incorporate the foregoing above as if fully set out herein.

159.     By making changes to Plaintiffs' home equity line of credit loan after the loan commenced, that does not unequivocally benefit the Plaintiffs for the duration of the loan, Chase Bank is in violation of the Home Equity Loan Consumer Protection Act, 15 U.S.C. § 1637A.

160.     As a result of Chase Bank's conduct and inactions, Plaintiffs suffered damages as set forth at ¶ 83 supra.

161.     Chase Bank's conduct and actions were willful, rendering Chase Bank liable for actual damages in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a)(1) and statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(A).

162.     As a result of Chase Bank's willful conduct and actions, JPMorgan is liable to Plaintiffs through the Doctrine of Respondeat Superior.

163.     Alternatively, Chase Bank's conduct and actions were negligent, rendering Chase Bank liable for actual damages in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a)(1) and statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(A).

164.     As a result of Chase Bank's negligent conduct and actions, JPMorgan is liable to Plaintiffs through the Doctrine of Respondeat Superior.

165.     Plaintiffs are entitled to recover costs and attorneys' fees from Defendants in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a)(1).

166.     This Court has the equitable power to enjoin Defendants from engaging in conduct that violates the Home Equity Loan Consumer Protection Act and Regulation Z, and Plaintiffs request that this Court exercise this equitable jurisdiction.


## COUNT IX

167.     The Plaintiffs reallege and incorporate the foregoing above as if fully set out herein.

168.     By making changes to Plaintiffs' home equity line of credit loan after the loan commenced, that does not unequivocally benefit the Plaintiffs for the duration of the loan, Chase Bank is in violation of 15 U.S.C. § 1647(c)(2)(F).

169.    As a result of Chase Bank's conduct and inactions, Plaintiffs suffered damages as set forth at ¶ 83 supra.

170.    Chase Bank's conduct and actions were willful, rendering Chase Bank liable for actual damages in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a)(1) and statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(A).

171.    As a result of Chase Bank's willful conduct and actions, JPMorgan is liable to Plaintiffs through the Doctrine of Respondeat Superior.

172.    Alternatively, Chase Bank's conduct and actions were negligent, rendering Chase Bank liable for actual damages in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a)(1) and statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(A).

173.    As a result of Chase Bank's negligent conduct and actions, JPMorgan is liable to Plaintiffs through the Doctrine of Respondeat Superior.

174.    Plaintiffs are entitled to recover costs and attorneys' fees from Defendants in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a)(1).

175.    This Court has the equitable power to enjoin Defendants from engaging in conduct that violates 15 U.S.C. § 1647, and Plaintiffs request that this Court exercise this equitable jurisdiction.

## COUNT X

176.    The Plaintiffs reallege and incorporate the foregoing above as if fully set out herein.

177.    By making changes to Plaintiffs' home equity line of credit loan after the loan commenced, that does not unequivocally benefit the Plaintiffs for the duration of the loan, Chase Bank is in violation of 15 U.S.C. § 1647(c)(4)(A).

178.     As a result of Chase Bank's conduct and inactions, Plaintiffs suffered damages as set forth at ¶ 83 supra.

179.     Chase Bank's conduct and actions were willful, rendering Chase Bank liable for actual damages in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a)(1) and statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(A).

180.     As a result of Chase Bank's willful conduct and actions, JPMorgan is liable to Plaintiffs through the Doctrine of Respondeat Superior.

181.     Alternatively, Chase Bank's conduct and actions were negligent, rendering Chase Bank liable for actual damages in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a)(1) and statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(A).

182.     As a result of Chase Bank's negligent conduct and actions, JPMorgan is liable to Plaintiffs through the Doctrine of Respondeat Superior.

183.     Plaintiffs are entitled to recover costs and attorneys' fees from Defendants in an amount to be determined by this Court pursuant to 15 U.S.C. § 1640(a)(1).

184.     This Court has the equitable power to enjoin Defendants from engaging in conduct that violates 15 U.S.C. § 1647 and Plaintiffs request that this Court exercise this equitable jurisdiction.

## COUNT XII

185.     The Plaintiffs reallege and incorporate the foregoing above as if fully set out herein.

186.     Chase Bank violated the New York State Consumer Protection Act, N.Y. Gen. Bus. Law § 349(a), through the false, deceptive and/or illegal business practices it used in maintaining and operating Plaintiffs' HELOC loan in the context of mismanaging Plaintiffs' payments and accumulating numerous errors on Plaintiffs' account.

187.    As a result of Chase Bank's conduct and actions, Plaintiffs suffered damages as set forth at ¶ 83 supra, and are entitled to actual damages and injunctive relief, and costs and attorneys' fees, pursuant to N.Y. Gen. Bus. Law § 349(h).

188.    Chase Bank's conduct and actions were willful or knowing, rendering Chase Bank liable for treble damages, up to $1,000 per violation, pursuant to N.Y. Gen. Bus. Law §349(h).

189.    As a result of Chase Bank's conduct and actions, JPMorgan is liable to Plaintiffs through the Doctrine of Respondeat Superior.


### PRAYER FOR RELIEF

Plaintiffs, Richard R. Gomes and Carol Ricciuti pray that this Court:

a.    Grant an order certifying the proposed class herein under Federal Rule 23 and appointing Plaintiffs and their undersigned counsel of record to represent same;

b.    Create a common fund available to provide notice of and remedy Defendants' violations;

c.    Declare that Defendants violated Regulation Z;

d.    Declare that the Defendants violated the Fair Credit Billing Act;

e.    Declare that the Defendants violated the Home Equity Loan Consumer Protection Act;

f.    Declare that the Defendant violated the New York State Consumer Protection Act;

g.    Enter judgment against Defendants, for statutory, actual and punitive damages, costs, and reasonable attorneys' fees as provided by Regulation Z;

h.  Enter judgment against Defendants, for statutory, actual and punitive damages, costs, and reasonable attorneys' fees as provided by the New York State Consumer Protection Act;

i.  Enter judgment against Defendants for pre-judgment and post-judgment interest as provided by law; and

j.  Grant such further relief as deemed just.

## JURY DEMAND

Plaintiffs, Richard R. Gomes and Carol Ricciuti, demand trial by jury.

Respectfully submitted,

Dated: January 11, 2018

**LAW OFFICE OF ABEL L. PIERRE, ATTORNEY-AT-LAW, P.C.**
140 Broadway, 46th Floor
New York, New York 10005
Telephone:  (212) 766-3323
Facsimile:  (212) 766-3322
abel@apierrelaw.com

**Attorney for Plaintiffs**